TENDERED
FOR FILING
ON

MAR ‌ 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR 1 6 2004

DAVID MALAND, CLERK
By 332
Deputy

| | | |
|---|---|---|
| VISTO CORPORATION, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 2-03CV-333 TJW |
| | § | |
| v. | § | Hon. T. John Ward |
| | § | |
| INFOWAVE SOFTWARE, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF VISTO'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

Infowave seeks to confuse the issues in this case by obfuscating claim construction and misrepresenting the functionality of Infowave's Symmetry Pro Products. Contrary to Infowave's assertions, the single claim at issue here, a claim that defines a *system* including "an e-mail synchronization module for using a predetermined criterion to determine whether to send e-mail to a central mail store," reads directly on the accused Symmetry Products. The accused products that are being advertised and distributed today by Infowave in the United States include an email synchronization module that uses predetermined criteria, such as the receipt of a new message, to determine whether to send e-mail to a central mail store.

Infowave's challenge to the proposed injunction involves nothing more than the favorite technique of the infringer – importing additional limitations from the specification of the patent into the claims to avoid infringement. Although this technique is appropriate under very limited conditions, such as when an applicant expressly disclaims alternative structures that otherwise

would fall within the scope of the properly interpreted claim,[1] none of the special conditions are present here. Indeed, Infowave makes no attempt to identify special conditions.

Infowave's Symmetry Pro Products fall directly within the scope of properly interpreted claims of Visto's U.S. Patent 5,961,590 ("the '590 patent").[2] An injunction is appropriate to remedy the infringement pending trial.

## II. ARGUMENT

### A. Infowave's Claim Construction Arguments Are Legally Flawed

The disputed elements at issue in this motion, i.e., the "e-mail synchronization module" and "central mail store," are simple components of the claimed system that are readily understood by those of ordinary skill in the art.

#### 1. "e-mail synchronization module"

Infowave's construction of the e-mail synchronization module is legally erroneous. In fact, Infowave offers no construction for this *module* of the claimed system. Instead, Infowave ignores the obvious, that the language at issue specifies a component of a system, a module, and instead provides an unduly restricted and legally erroneous definition of an element that is not specified – a specific, advanced form of "synchronization" that improperly incorporates many elements of the preferred embodiments shown in the specification.[3] The claim is not directed to

---

[1] *See SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.* 242 F.3d 1337, 1344 (Fed. Cir. 2001), where the patentee unequivocally stated that "all embodiments" of the "present invention contemplated and disclosed herein" are directed to a specific configuration.

[2] Infowave attempts to distinguish versions of the Symmetry Products. However, there is no material distinction. Infowave's expert admits that the products are the same for purposes of this Motion. *See* Weinstein Decl. at 11-13. *See also* Opposition and Exhibit S at p. A1080, which shows advanced synchronization features for the express, version of the Symmetry software, *e.g.* "delete status is propagated from the device or pop3 account."

[3] Infowave defines "synchronization" as "an active process for maintaining consistency through comparison of the state of versions of messages on an e-mail client, global server, and end user devise, i.e. not merely forwarding e-mail". Opposition at 11. In order to come to this improper interpretation, Mr. Weinstein examines the specific details of one system disclosed in the patent, to the exclusion of others, and includes "the total synchronization mechanism [including] three synchronization modules (start, general and content based) ..." (Weinstein Decl. at 9) because it would be "reasonable." He does not conclude, as he must, that Visto's patent requires the inclusion of all the aspects of the preferred embodiments. *See SciMed,* 242 F.3d 1337.

a *method* that includes a specific, advanced form of "synchronization" as Infowave asserts. Rather, the claim is directed to a *system* that comprises, *inter alia*, "an e-mail synchronization module."

The "e-mail synchronization module" is part of a "client system" that "may be stored on a computer readable storage medium."[4]   The term "e-mail synchronization" is an adjectival qualification placed on the term "module."  In software, a "module" is a part of a program. Programs are composed of one or more independently developed modules.  A single module can contain one or several routines.[5]

The patent informs those of ordinary skill in the art that the e-mail synchronization module performs the function of using a "predetermined criterion" to "determine whether to send e-mail to a central mail store."[6]  Propagating email to a second location, so that the email co-exists in two locations, is the essence of "synchronization."[7]  Thus, in the context of the claim, the moniker "e-mail synchronization module" clearly refers to a part of a client program stored on a computer readable medium that performs the function of using a predetermined criterion to determine whether to send e-mail to a central mail store.  The additional requirements or routines advocated by Infowave's witness are not compelled by the plain meaning of the e-mail synchronization module. At best, Mr. Weinstein has imported details of the preferred embodiments that are not compelled by the claim.  *See* Opposition Brief at 11-12.

Contrary to Infowave's assertions, the presence of functional language does not convert the "e-mail synchronization module" into a means-plus-function limitation. *Personalized Media*

---

[4] '590 Patent, Col. 2:31-33.
[5] *See* Declaration of Shawn Hansen in support of Visto's Reply brief attached hereto as Exh. 1 ("Hansen Decl.") at Exh. A.
[6] *See, e.g.,* '590 patent, col. 2, ll. 14-17 (defining "e-mail synchronization module" as a system module that "uses a predetermined criterion to determine whether to send email to a second mail store").
[7] "Synchronize:" "to represent or arrange (events) to indicate coincidence or coexistence."  Merriam-Webster Online Dictionary (www.m-w.com), Exh. B to Hansen Decl.

*Communications, LLC v. U.S. Int'l. Trade Comm'n,* 161 F.3d 696, 704 (Fed. Cir. 1998). The limitation does not use the word "means," and therefore this limitation is presumed not to invoke the provisions of 35 U.S.C. Section 112, ¶ 6. *Id.* at 705. Neither intrinsic nor extrinsic evidence, rebuts this presumption because the term "e-mail synchronization module" is a sufficient recitation of "structure, material or acts." "Module" itself has a well-understood meaning to those of skill in the art connotative of "structure, material or acts," including a part of a client program stored on a computer readable medium. No other extrinsic evidence, including the expert testimony and no evidence intrinsic to the patent casts doubt on this conclusion. Moreover, neither the fact that the "module" is defined in terms of its function, nor the fact that the term "module" does not connote a precise physical structure in the minds of those of skill in the art detracts from the definiteness of structure. *Id.* at 705, *citing Greenberg v. Ethicon Endo-Surgery, Inc.,* 91 F.3d 1580, 1583 (Fed. Cir. 1996). Even though the term "module" does not specifically evoke a *particular* structure, it does convey to one knowledgeable in the art structures known as "modules." Thus, the term "e-mail synchronization module" is a sufficiently definite structural term to preclude the application of § 112, ¶ 6. *See Personalized Media Communications,* 161 F.3d at 705.

Furthermore, the adjectival qualification ("e-mail synchronization") placed upon otherwise sufficiently definite structure ("module") does not make the sufficiency of that structure any less sufficient for purposes of § 112, ¶ 6. Instead, it further narrows the scope of those structures covered by the claim and makes the term more definite. *Id.*

The use of the word "e-mail synchronization" in conjunction with the word "module" merely places an additional functional constraint (determining whether to send e-mail to a central mail store) on a structure (module) otherwise adequately defined. *See, e.g.,* '590 patent, col. 2, ll.

14-17 (defining "e-mail synchronization module" as a system module that "uses a predetermined criterion to determine whether to send email to a second mail store"). Accordingly the "e-mail synchronization module" limitation in the asserted claim recites sufficiently definite structure and therefore do not come within the ambit of § 112, ¶ 6.[8] *See, Id.*

### 2. "central mail store"

In order to avoid infringement, rather than interpret the meaning of the "central mail store" limitation, Infowave's witness attempts to import all of the functionality of the preferred embodiment of the global server 106 into the central mail store limitation. This is clearly erroneous. Although the global server satisfies the claim requirements, it is well established that the details of preferred embodiments may not be imported into the claim unless specifically called out. Here, the central mail store is a structure that stores mail. There is no requirement that the structure perform any of the additional functions specified by Infowave.

### B. Visto's Patents Are Presumed Valid Because Infowave Has Not Shown Any "Persuasive Evidence of Invalidity"

Although Infowave attempts to demonstrate that individual elements of the claimed invention were present before the issuance of the '590 patent, no attempt has been made to demonstrate obviousness under section 35 U.S.C. Section 103. Using impermissible hindsight to support its arguments for obviousness, Infowave merely points out that all claim elements exist somewhere in the prior art and uses the '590 patent itself as a guide to assemble them. This cannot form the basis for a finding of obviousness, as "it is impermissible to use the claimed invention as an instruction manual or 'template' to piece together the teachings of the prior art so that the claimed invention is rendered obvious. . . . '[o]ne cannot use hindsight reconstruction to

---

[8] It appears that this may be an asserted distinction without difference, as Infowave fails to show how the application of 35 U.S.C. §112, ¶ 6 would lead to a different result.

pick and choose among isolated disclosures in the prior art to deprecate the claimed invention.'" *In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) (internal citations omitted).  Accordingly, Infowave has not made any persuasive showing that the '590 patent is invalid, and Visto is entitled to the statutory presumption of validity of the '590 patent.

### C.      Visto Has Shown That Infowave's Symmetry Products Infringe the Patents at Issue

#### 1.      "e-mail synchronization module"

The accused products clearly meet the limitations of the properly construed claims. Infowave argues that the accused products do not infringe because they do not "synchronize deletes or read status changes OTA [over the air]."  This argument is frivolous.  The claim calls for an "e-mail synchronization module," not "synchronization of deletes or read status changes OTA."  The e-mail synchronization module uses a predetermined criterion to determine whether to send e-mail to a central mail store.  By propagating email to a second location, in this case a central mail store, so that the email co-exists in two locations, synchronization is achieved. There is no dispute as to the presence of this limitation. *See* Weinstein Decl. at 11-15.

Moreover, Infowave supports its arguments relative to "synchronization" by citing *Visto* emails that were directed not to the issues presented here, but, rather, to certain early versions of Infowave products directed to Smartphone applications and PocketPC.  Although not required by the claim, the Symmetry Products sold today synchronize "deletes" and "read status changes" OTA. *See Opposition* and Exhibit S at p. A1080; Hansen Decl. Exh. C.  When an individual retrieving e-mail on a remote access device using Infowave's technology deletes an e-mail on the remote device, it also is deleted on the LAN. *See Id.*

It can thus be seen that the Symmetry Products unquestionably include an "e-mail synchronization module" under both Visto's and Infowave's proposed claim constructions.

Infowave's Symmetry Products clearly infringe in either case.

### 2.    "central mail store"

Infowave advertises and offers to sell infringing systems in the United States, and thus is an infringer under § 271, even if its gateways are positioned outside the borders to avoid U.S. law. There is no dispute that the systems of the accused Symmetry Products are offered for sale, sold, and used within the U.S.   To the extent that Infowave's gateways are located outside the United States, the gateways are integral to the infringing systems of the Symmetry Products offered for sale and sold in the United States by Infowave.

In an analogous case, the plaintiff's patent covered a hyperbolic radio navigation system and was allegedly infringed by a system consisting of transmitting stations in Hawaii, North Dakota and Norway.[9]   The Norway station was an essential element of the accused system because at least three stations were necessary for operation. The Court of Claims decided *per curiam* that "the whole [infringing] system must be deemed, at least for purposes of litigating the patent here involved, to be a unity and the location of that unity must be deemed to be in United States territory.   Here it has planted several of its feet, and use of United States territory is indispensable to it. The location of facilities in some foreign countries is also essential to the plan, but the selection of any single country is, apparently, not essential. Any one such country could readily be abandoned for another."[10]

### D.    Since Validity is Presumed and Infowave's Infringement is Clear, Visto is Entitled to the Rebuttable Presumption of Irreparable Harm; the Balance of Hardships Clearly Favors the Grant of a Preliminary Injunction; and the Public Interest is Served by Protecting Visto's Patent Rights

Visto has clearly established a likelihood of success and is therefore entitled to a rebuttable presumption of that irreparable harm if a preliminary injunction were not to issue.

---

[9] *Decca Ltd. v. United States,* 544 F.2d 1070, 1075 (Ct. Cl. 1976).

*Polymer Techs., Inc. v. Birdwell*, 103 F.3d 970, 973 (Fed. Cir. 1996); *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., Inc.* 132 F.3d 701, 708 (Fed. Cir. 1997); *H.H. Robertson Company v. United Steel Deck, Inc.*, 820 F.2d 384, 390 Fed. Cir. 1987). In addition to the rebuttable presumption, Visto has shown that it will suffer irreparable injury absent the requested injunction. Defendant is continuing to market its Symmetry Products to wireless carriers, and admits that once obtained as a customer, will lock Visto out of that market for several years. Opposition Brief at 23. The copying of technology establishes irreparable injury because the infringer gains an unfair advantage by avoiding the expense of independent development. *DSC Communication Corp. V. DGI Technologies, Inc.*, 898 F.Supp. 1183, 1195 (N.D. Tex. 1995). "In a highly competitive market, injury to market share can constitute irreparable harm." *Hybritech, Inc. v. Abbott Labs*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988).

The balance of hardships is in Visto's favor. A court will usually grant relief unless the balance tips decidedly in favor of the defendant. *Hybritech*, 849 F.2d at 1457-58. Allowing Infowave to continue to infringe Visto's patent rights until after trial would amount to granting an involuntary license. *American Parking Meter Adver., Inc. v. Visual Media, Inc.*, 693 F.Supp. 1253 (D. Mass. 1987), *aff'd without opinion*, 848 F.2d 1244 (Fed. Cir. 1988). Plaintiff does not change this balance by arguing that its company would be harmed by an injunction. *See* Opposition at 23, because it was not entitled in the first place to structure its business around the infringement of Visto's technology. *Autoskill Inc, v. National Education Support Sys., Inc.*, 994 F.2d 1476, 1498 (10th Cir. 1993).

---

[10] *Id.*

## III.    **CONCLUSION**

The Court should grant Visto's Motion for Preliminary Injunction because Visto's patent is valid, Infowave infringes it, and the other preliminary injunction factors flow naturally from Infowave's infringement.

Respectfully submitted,

*Sam Baxter*

Sam F. Baxter, Attorney-in-Charge
TX State Bar No. 01938000
Kristi J. Thomas
TX State bar No. 24027909

MCKOOL SMITH, PC
P.O. Box O
Marshall, Texas 75671
Telephone:  903-927-2111
Facsimile:  903-927-2622

Of Counsel:
Ronald S. Katz,
CA State Bar No. 085713
Robert D. Becker
CA State Bar No. 160648
J. Bruce McCubbrey
CA State Bar No. 038817

MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA  94304
Telephone:  650-812-1300
Facsimile:  650-213-0260

ATTORNEYS FOR PLAINTIFF
VISTO CORPORATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of March, 2004, a true and correct copy of the within document was caused to be served on the attorneys of record at the following addresses as indicated:

Robert M. Chiaviello, Jr.
Michael Fogarty, Esq.
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 855-8000
(214) 855-8200 facsimile


Otis Carroll, Esq.
Ireland, Carroll & Kelley, PC
6101 S. Broadway, Suite 500
Tyler, TX  75703
(903) 561-1600
(903) 581-1071 facsimile

_____
Sam Baxter

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VISTO CORPORATION, | § § | |
| Plaintiff, | § § | Civil Action No. 2-03CV-332 TJW |
| v. | § § | |
| INFOWAVE SOFTWARE, INC., | § § | |
| Defendant. | § § | |

## DECLARATION OF SHAWN G. HANSEN

I, Shawn G. Hansen, declare as follows:

1. I am an attorney duly licensed to practice law in the states of California and Utah. I am an associate with the law firm of Manatt, Phelps & Phillips LLP and am involved in the firm's representation of Plaintiff Visto Corporation in this case. I have personal, first-hand knowledge of the matters stated herein.

2. Appended hereto as Exhibit A is a true and correct copy of the definition for the term "module," which I personally printed from the Webopedia Computer Dictionary available at: http://www.pcwebopedia.com.

3. Appended hereto as Exhibit B is a true and correct copy of the definition for the term "synchronize," which I personally printed from the Merriam-Webster Online Dictionary available at: www.m-w.com.



**EXHIBIT**

_____

4.  Appended hereto as Exhibit C is a true and correct copy of a document entitled "Features &

    Benefits" relating to Infowave's Symmetry Pro Enterprise product, which I personally

    printed from Infowave's website at:

    http://www.infowave.com/products/spro_enterprise_features.html.

5.  I declare under penalty of perjury of the laws of the United States that the foregoing

    statements are true and correct to the best of my personal knowledge.


DATED this 8th day of March, 2004

                                        Shawn G. Hansen

2

# Exhibit A

June 15 - 16, 2004 • New York, NY   INTERNET PLANET. CONFERENCE & EXPO   Growing Business Online

Sponsored Links

**Java XML to PDF formatter**
XSL FO to PDF, Postscript. Tutorial
Free Trial. Demos, stylesheets, DTD

**Java Reporting Engine**
java engine to create pdf, rtf, html, &
txt reports from xml data.

**F5 Network API**
Increase app. performance Decrease
development time

**J2EE / JSP Shopping Cart**
Java based eCommerce software.
Source Code and full evaluation.

internet.com   You are in the: Small Business Channel   E   Jump to Website   sb

internet.com (Webopedia)   The #1 online encyclopedia
dedicated to computer technology

Enter a word for a definition...                    ...or choose a computer category.

[          ]  Go!        choose one...          Go!

---

**MENU**
Home
Term of the Day
New Terms
New Links
Quick Reference
Did You Know?
Search Tool
Tech Support
Webopedia Jobs
About Us
Link to Us
Advertising

**Compare Prices:**
[          ] go
**Hardware**Central

**Talk To Us...**
Submit a URL
Suggest a Term

# module

Last modified: Tuesday, July 29, 2003

**(1)** In software, a module is a part of a program. Programs are composed of one or more independently developed modules that are not combined until the program is linked. A single module can contain one or several routines.

**(2)** In hardware, a module is a self-contained component.

•**E-mail this definition to a colleague**•

**Sponsored listings**

**Network Liquidators: Refurbished Cisco Interfaces & Modules** - Buys and sells used and refurbished
network equipment, including Ciscomemory, modules, and interface cards

**GlobalSpec.com: Photosensor Modules** - Provides database of suppliers for Photosensor Modules. Browse
catalogs and view technical information.

**eBay: Cisco Interfaces & Modules** - Online marketplace for buying and selling Cisco interfaces and modules.

**Related Categories**

Procedures, Functions and
Routines

Programming

**Related Terms**

link

modular architecture

program

Report an Error



**Featuring renowned search engine expert, Danny Sullivan**

**internet.com**

Developer
Downloads
International
Internet Lists
Internet News
Internet Resources
IT
Linux/Open Source
Small Business
Windows Technology
Wireless Internet
xSP Resources

Search internet.com
Advertise
Corporate Info
Newsletters
Tech Jobs
E-mail Offers

**internet commerce**

Be a Commerce Partner
Business Search
Save on Flat Panel TVs
Shop Digital Cameras
Internet Jobs
Business Search
Domain registration
Dedicated Hosting
Best Deals on PDAs!
Corporate Gifts
Audio Conferencing

*For internet.com pages about* **module** *CLICK HERE. Also check out the following links!*

**LINKS**      ⚡ = Great Page!

## Perl 5 module FAQ

Contains a list of Perl 5 modules (reusable software). Also contains module terminology, guidelines for creation, converting Perl 4 library scripts into modules, and guidelines for reusing application code.

**Sponsored listings**

**Dealtime: Memory Module Products** - Compare prices with DealTime and find discount prices on computer, software, and office products.

**Dealtime: Handspring Module Products** - Compare prices with DealTime and find discount prices on computer, software, and office products.

**Dealtime: Handspring Visor Module Products** - Compare prices with DealTime and find discount prices on computer, software, and office products.

**Dealtime: Pc100 Memory Modules Products** - Compare prices with DealTime and find discount prices on computer, software, and office products.

**Dealtime: Samsung Memory Module Products** - Compare prices with DealTime and find discount prices on computer, software, and office products.

routine



Give Us Your Feedback

**Shopping
MODULE Products**
Compare Products,Prices and Stores

**Shop by Category:
Expansion Modules**
2757 Model Matches

**Random Access Memory
(RAM)**
7822 Model Matches

**Hard Drives**
1276 Model Matches

**Network Adapters**
1070 Model Matches

**Other Network Devices**
715 Model Matches

**Find the lowest price for a variety of products:**

All Categories


**GO**

**Featured Categories:**

Computers
Digital Cameras
Home Theatre
Video Games

Laptops
Software
Electronics
PDA's

**Hardware**Central"

JupiterWeb networks:

internet.com | ⊕EARTHWEB |   ClickZ

Search JupiterWeb: [_____] Find

Jupitermedia Corporation has four divisions:
JupiterWeb, JupiterResearch, JupiterEvents and JupiterImages

Copyright 2004 Jupitermedia Corporation All Rights Reserved.
Legal Notices, Licensing, Reprints, & Permissions, Privacy Policy.

Jupitermedia Corporate Info | Newsletters | Tech Jobs | E-mail Offers

# Exhibit B



Merriam-Webster OnLine

HOUSEHOLD Get the money you need with a Household Express Equity Loan GO

Merriam-Webster FOR KIDS    Encyclopædia BRITANNICA

Merriam-Webster ONLINE    Merriam-Webster COLLEGIATE*    Merriam-Webster UNABRIDGED

HOME
PREMIUM SERVICES ▼
M-WCollegiate.com
M-WUnabridged.com
Britannica.com
Multi-User Licenses
DOWNLOADS ◄
WORD OF THE DAY ◄
WORD GAMES ◄
WORD FOR THE WISE ◄
ONLINE STORE ◄
HELP ◄

Merriam-Webster Inc.
Company information

## Merriam-Webster Online Dictionary

Thesaurus

One entry found for **synchronize**.

**Merriam-Webster Online**
◉ Dictionary
○ Thesaurus

[            ] Go

Main Entry: **syn·chro·nize** 🔊
Pronunciation: `'si[ng]-kr&-"nIz, 'sin-`
Function: *verb*
Inflected Form(s): **-nized; -niz·ing**
*intransitive senses* : to happen at the same time
*transitive senses*
**1** : to represent or arrange (events) to indicate coincidence or coexistence
**2** : to make synchronous in operation
**3** : to make (motion-picture sound) exactly simultaneous with the action
- **syn·chro·niz·er** *noun*






Get the **Top 10 Search Results for "synchronize"**
For **More Information on "synchronize" go to Britannica.com**

Pronunciation Symbols

**Palm & Pocket PC**
Browse and download Merriam-Webster e-books and games for Palm and Pocket PC PDAs and Mobile Phones
**Merriam-Webster Online Store**

**Handheld Collegiate**
Now you can take the Eleventh Edition with you anywhere as Franklin's new Speaking Electronic Handheld!
**Franklin.com/estore**

**Merriam-Webster**
**Collegiate**.com
**14-day Free Trial**

Products      Premium Services      Company Info      Contact Us      Advertising Info      Privacy

© 2004 Merriam-Webster, Incorporated

# Exhibit C

Infowave Wireless Email - Wireless email solutions for the mobile world. Get your free wireless email today    Page 1 of 3

Case 2:03-cv-00332-TJW   Document 35   Filed 03/16/04   Page 21 of 23 PageID #: 1490



**infowave** *Wireless Solutions for a Mobile World*

Contact | Site Map | Search

**Home**｜**Free Trial**｜**Solutions**｜**Products**｜**Support**｜**Resources**｜**Partners**｜**News & Events**｜**Company Information**

Home : Products : Symmetry Pro Enterprise - Features & Benefits

**Products**

○ Product Overview
○ Symmetry Pro for Individuals
○ Symmetry Pro Workgroup
**Symmetry Pro Enterprise**
  ○ General Overview
  ○ Features and Benefits
  ○ Requirements & Technical Information
  ○ View PDF
  ○ Get Your Free Trial Today
○ Wireless Business Engine
○ Telispark Mobile Enterprise
○ Symmetry Express
○ Mobile Application Gateway
○ Infowave Mobility Platform

# Features & Benefits

Symmetry Pro Enterprise offers a broad range of features including:

New User Features
**Calendar synchronization**
In addition to the Meeting Request support you already enjoy, changes in your corporate calendar are pushed to your mobile device instantly. Stay on top of any changes your delegate makes while you're out of the office.

**Request PIM information from the wireless device**
Now you can get critical information while you're on the road, including GAL or contact entries, calendar summaries or task lists. Never be without the critical piece of data again.

**Request old messages from the Inbox or Sent Items**
Users can now selectively retrieve old messages that are no longer on the mobile device, whether they were sent or received. Never be without that critical piece of data contained in an old message again.

**All devices now support attachments**
Attachments can be retrieved to any device, including Palm powered devices running OS 3.5 or higher. Attachments can even be sent wirelessly from most devices. Access to that critical attachment no longer has to wait until you return to the office.

**Power forwarding**
Symmetry Pro can be used to forward an email with all the associated attachments without retrieving the attachments to your wireless device.

**Chinese language support**
Symmetry Pro Enterprise can now properly display the contents and attachments of email messages written in Chinese.

**Optimized for these great new devices:**
Kyocera 7135 (Palm OS)
PalmOne Treo 600 (Palm OS)
Motorola MPx 200 (Windows Mobile Smartphone 2002)

**Free Trial**
Get your Free Trial to a wireless email solution. You can instantly access your corporate email, task, contacts, calendar and other PIM information for FREE



**BUY NOW**
To purchase Symmetry Pro for Individuals, click here



**What People Are Saying:**
"Symmetry Pro's real plusses come from its functionality ... its robust capabilities."
*Konstaninos Karagiannis(PC Magazine)*

If you would like to receive more information please contact

info@infowave.com

Case 2:03-cv-00332-TJW   Document 35   Filed 03/16/04   Page 22 of 23 PageID #: 1491

Nokia 3650/7650 (Symbian)
Nokia 6600 (Symbian)
Sony Ericsson P800 (Symbian)

New Features for IT
**New Administrative Console**
IT administrators can now view the status of all servers simultaneously and
instantly see that they are running properly. The last actions taken by the
system and for whom, is shown in a convenient "dashboard" display of each
server. Administrators can also easily view the last action for any particular
user. It's easy to see at a glance that everything is working as expected.

**Multi-server administration**
Administrators of large deployments can now view all active Symmetry Pro
servers from a single Administrative Console and easily move licensed users
from one server to another.

**Improved installation routine**
During the installation of the server component, Symmetry Pro performs a
complete system check to determine compatibility. Any issues of concern are
listed and suggestions on how to resolve the issues are presented. This allows
almost anyone to successfully install the Symmetry Pro server software for
Enterprise or a Workgroup.

**New device platforms supported**
Windows Mobile Smartphone 2002 and Symbian OS are now supported, in
addition to Pocket PC 2002/2003 and Palm OS 3.5 or higher.

Existing Features:
**Instant and intuitive access to email.**
Users can receive, send or forward email from their corporate Microsoft®
Exchange server. The intuitive client applications allows users to get up and
running with no training required. On the Pocket PC, users access their mail
using the Pocket Outlook email application they already know. On the Palm,
users access their mail using an intuitive mail client that looks and feels like
their desktop.

**Support for email attachments.**
Users can receive, open and modify any attached file on their Pocket PC
device, allowing them the same functionality they are used to at their
desktop. On Palm devices, users can forward attachments to an Internet fax
service for immediate review. Dealing with attachments while mobile means
that users can be more responsive and productive while away from their desk.

**Wireless propagation of message state.**
When a user is wirelessly connected and reads, forwards, replies to, marks as
unread, or deletes a message on the device, its state is changed on the

Infowave Wireless Email - Wireless email solutions for the mobile world. Get your free wireless email today.

Page 3 of 3

Case 2:03-cv-00332-TJW   Document 35   Filed 03/26/04   Page 23 of 23   PageID #: 1492

corporate Microsoft Exchange server almost immediately. A user need never delete or read a message in two places again.

**User profile management.**
Users have the flexibility to create email message filters, establish message priority, receive meeting requests and configure message truncation on their device. This allows users to wirelessly receive only those messages most important to them, and to receive only a portion of those messages if they wish.

**Highly secure.**
Symmetry Pro Enterprise takes advantage of the latest in security technology including end-to-end encryption using AES cryptography. The encryption keys used on the Symmetry Pro Enterprise server and the wireless device are never transmitted over the air. Users can feel secure in the knowledge that their valuable corporate data is fully protected during wireless transport.

**Ease of installation and maintenance.**
Symmetry Pro Enterprise installs as a service within the enterprise server to the Gateway. Installation requires some IT assistance, and supports thousands of users.

**Support for a broad range of devices and networks.**
Symmetry Pro Enterprise supports almost any Palm OS, Symbian OS, Smartphone and Pocket PC 2003 device on the market today. It works with virtually any wireless network capable of providing access to the Internet.

**Home - News & Events - Company Information - Buy Now - Contact Us**
**Products:** Symmetry Pro - Symmetry Pro Workgroup - Symmetry Pro Enterprise - Telispark Mobile Enterprise - Wireless Business Engine
**Solutions:** - Mobile Operators - Enterprises - Workgroups - Mobile Professionals
**Free Trial:** - Professionals - Workgroups - Enterprises
**Support - Partners - Site Map - Legal & Privacy - Send This Page - My Account**

© 2004 Infowave Software, Inc.