```
                                                              FILED
                                                         U.S. DISTRICT COURT
                                                       EASTERN DISTRICT OF TEXAS
        IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF TEXAS                 MAR 2 2 2004
                  MARSHALL DIVISION
                                                        DAVID MALAND, CLERK
                                                        By
                                                        Deputy
```

| | | |
|---|---|---|
| **VISTO CORPORATION,** | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2-03CV-332 TJW |
| v. | § | |
| **INFOWAVE SOFTWARE, INC.,** | § | |
| | § | (JURY TRIAL DEMANDED) |
| Defendant. | § | |

### INFOWAVE SOFTWARE, INC.'S SURREPLY
### TO VISTO'S MOTION FOR PRELIMINARY INJUNCTION

1. Visto attempts to circumvent the territorial limitations of United States Patent law by arguing around the fact that the central control point of Infowave's accused system - the Gateway – is located in Canada. The case law is controlling: If the central control point of an allegedly infringing system is located outside the United States, there can be no infringement of a United States patent. *Deepsouth Packing Co., Inc. v. Laitram Corp.*, 406 U.S. 527 (1972). The Visto reply contains additional defects: A new and late claim construction, submission of new documents and a failure to connect the claims to Infowave's alleged United States activities. Each of these issues will be addressed in this surreply.

2. In the seminal *Deepsouth* Case, the Supreme Court ruled that a United States Patent has no effect outside the territorial limits of the United States. Visto ignores this case, relying instead on a Court of Claims decision, *Decca Ltd. v. United States*, 544 F.2d 1070, 1075 (Ct. Cl. 1976), to support its allegation that the accused Infowave system including a Gateway was made, used or sold in the United States. This case is distinguishable for two reasons. First, the *Decca* Case was one against the United States government involving the government's infringement that took place in part on a United States government facility, albeit in a foreign

country. Second, the same court has distinguished *Decca* based on the location of the "control point" of the accused system.

3. The infringing system in *Decca* was developed by the United States government. All of the equipment for the Norwegian station was "purchased by the United States, installed by the United States, continues to be owned by the United States, was operated initially by the United States and it operates today for the benefit of the United States under the direction and control of the United States." *Decca Ltd. v. United States*, 544 F.2d 1070, 1081 (Ct. Cl. 1976). The system in *Decca* was owned and operated for the benefit of the United States government, and the Court focused on this ownership and control by the United States to find that the United States patent laws would apply to the accused system. *Id.* at 1083. Here, however, the Infowave system is owned, operated, and controlled by a private Canadian corporation not the United States government, and accordingly, *Decca* is not applicable.

4. In *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 198 F. Supp. 2d 11 (D. Mass. 2002), a case distinguishing *Decca* with facts almost identical to the facts here, the Massachusetts District Court looked at a prepaid wireless system that was primarily located in Canada and found no infringement. In the accused system, a customer placed a call that was received in Canada at a radio tower and transmitted to a mobile telephone switching office, also located in Canada. The call was identified and rerouted to a node that would send the call to a database in Massachusetts to check the account balance, and once the balance was verified, the call was forwarded back to Canada for connection. *Id.* at 13-14. The Court ruled that despite the database being part of the system and located in the United States, this database did not direct, control or monitor the system and could not be classified as the system's "control point". *Id.* at 17. The fact that the database was an essential component of the system was not sufficient to

warrant a finding that the system was used in the United States because the database was not the system's "control point". *Id.* at 17-18.

5. In *Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197 (Ct. Cl. 1993), the same Court that decided *Decca* also looked at whether the "control point" for the system was located in the United States. *Decca* was distinguished because 1) the spacecraft at issue never entered the United States but merely transmitted signals to NASA; 2) there was no direct control exercised over the spacecraft from within the United States; and 3) the control point for the spacecraft was in England. *Id.* at 242-43. Since the control point was not in the United States, the spacecraft had not been used in the United States and could not form the basis for a finding of infringement. *Id.*

6. Similarly, the "control point" in the Infowave system is the accused Gateway. The Infowave Gateway is physically located outside the United States in Canada. *See* Visca Dec. ¶2 originally filed with Infowave's opposition and refiled here as Appendix A. The location of the Gateway in Canada is not by happenstance; rather, Infowave is a Canadian company, and it follows that Infowave would elect to have the control point of its system located in Canada. Further, Visto has conceded that the accused Gateway is "integral" to the accused system. *See* Visto's Reply at 7. Unlike the facts in *Decca*, the control point for the Infowave system (its Gateway) is not located in the United States, and thus, Visto cannot show that Infowave's system was made, used or sold in the United States.

7. In its reply, Visto introduces a new claim construction and submits new documents to bolster its fatally defective infringement allegations. In its initial moving brief, Visto provided a mere two paragraphs as to the alleged infringement. Now, in the face of admissions from one of Visto's engineers, that the Infowave products do not perform

synchronization as required by the one claim alleged to be infringed, Visto has changed its claim construction to argue for the first time that the mere forwarding of an e-mail, so that it exists on the desktop computer and the remote device (such as a PDA), constitutes the claimed synchronization. Such a broad construction is not supported by the patent or the file history and would render the patent invalid.

8. Visto's introduction of a new claim construction in its Reply illustrates the prematurity of Visto's motion. Infowave has explained that the Court should first conduct a *Markman* hearing before hearing Visto's motion for a preliminary injunction. Under this Court's Patent Rules, a rational and efficient procedure is established for reaching the proper claim interpretation. A further example of the difficulty with Visto's approach is that in its initial motion, Visto provided one alleged claim construction that it would rely upon to prove infringement, now in its reply, Visto introduces a new and different construction not found in its initial papers. Which one is the Court to consider?

9. Visto also attempts to introduce new evidence of an Infowave product. This evidence, however, was not part of Visto's initial infringement allegation asserted in its initial motion papers. Because, Visto has introduced new evidence and new claim construction arguments, Infowave responds with the Supplemental Declaration of Dr. Stephen B. Weinstein, Appendix B, which, again, refutes Visto's infringement allegations and proves the patents to be invalid in light of additional prior art United States Patents **under the new Visto construction**. The bottom line is that the Infowave products do not include logic that perform the required active process of synchronization. No Infowave product maintains consistency through comparison of the state of versions of messages on an email client, global server, and end user device. *Id.*

10. In addition, the new construction is not tied to the Infowave products. Visto cites to one paper, downloaded on the day the reply was filed, allegedly describing certain features of Infowave's Symmetry Pro Enterprise but fails to tie its new constructions to either this product or the other accused Infowave products. Visto argues that various elements of its claim are software modules, yet Visto has not identified any software module or software routine originating from Infowave that performs the alleged function or otherwise meets the claim. Visto has not demonstrated to the Court admissible evidence that each and every element of the Visto patent claim is met by each and every Infowave product alleged to infringe. Visto simply has failed in its burden and instead asks the Court to take Visto on its word without the necessary proof on file.

11. In the same light, none of Visto's papers tie the language of the apparatus claim to any evidence of anything Infowave had allegedly made, used, sold or offered for sale in the United States. The apparatus claim is to a "client system." Where is the client system? Who has such an infringing client system? Infowave merely is a provider of software solutions per the Declaration of George Reznik. Software solutions are not a "client system."

12. Finally, the Infowave literature discusses features and functions, while the patent claims structures for performing specific functions. Once again, Visto fails to cite to the alleged Infowave structure which performs the required function. Visto's motion is nothing more than an expensive exercise in trying to keep a superior competing product off of the market. Visto's Mr. Mason Ng got it right; the Infowave products do not perform synchronization and therefore do not infringe. The motion for preliminary injunction should be denied.

Respectfully submitted,

*[signature]*

Robert M. Chiaviello, Jr.
Texas Bar No. 04190720
Brett C. Govett
Texas Bar No. 08235900
Email: bobc@fulbright.com
Email: bgovett@fulbright.com

COUNSEL FOR PLAINTIFF
INFOWAVE SOFTWARE, INC.

OF COUNSEL

FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Paul Krieger
Texas Bar No. 11726470
Dudley Oldham
Texas Bar No. 15248000
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: pkrieger@fulbright.com
Email: doldham@fulbright.com

Otis W. Carroll
Texas Bar No. 03895700
Wesley Hill, Esq.
Texas Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway
P.O. Box 7879
Tyler, Texas 75711-7879
Telephone: (903) 561-1600
Facsimile: (903) 581-1071
Email: otiscarroll@icklaw.com

-7-

## CERTIFICATE OF SERVICE

I certify that the above instrument was served in compliance with FEDERAL RULES OF CIVIL PROCEDURE on March 15, 2004.

| | |
|---|---|
| Sam F. Baxter, Esq. | Ronald S. Katz, Esq. |
| Kristi J. Thomas, Esq. | Robert D. Becker |
| McKool Smith, PC. | J. Bruce McCubbrey |
| 505 East Travis Street | Manatt, Phelps & Phillips, LLP |
| Suite 105 | 1001 Page Mill Road |
| Marshall, Texas 75670 | Building 2 |
| | Palo Alto, CA. 94304 |

_____
Brett C. Govett

EXHIBITS NOT SCANNED

ORIGINALS ARE IN THE

CLERK'S OFFICE